## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ALVESTER LIPSCOMB, JR.,      Case No. 1:10-cv-396
  Plaintiff          Dlott, J.
               Litkovitz, M.J.

  vs

MICHAEL J. ASTRUE,       **REPORT AND**
COMMISSIONER OF        **RECOMMENDATION**
SOCIAL SECURITY,
  Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's

applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").

This matter is before the Court on plaintiff's Statement of Specific Errors (Doc. 8), the

Commissioner's Memorandum in Opposition. (Doc. 12) and plaintiff's Reply.  (Doc. 13).

### PROCEDURAL BACKGROUND

Plaintiff was born in 1968 and was 41 years old at the time of the administrative law

judge's (ALJ) decision.  (Tr. 751).  He received a high school diploma but did not complete any

other formal education or vocational training.  (Tr. 716).  He has past work experience in

operating machinery and making machine parts for automobiles and HVAC units.  (Tr. 718).

Plaintiff filed SSI and DIB applications on December 7, 2005, alleging a disability onset date of

August 1, 2005, due to anxiety, social phobias, and chronic pain in his ankle, knee, abdomen, and

back.  (Tr. 101, 697; 720-21).  The applications were denied initially and upon reconsideration.

Plaintiff requested and was granted a de novo hearing before Administrative Law Judge

("ALJ") Larry A. Temin.  (Tr. 39).  On September 26, 2008, the ALJ issued a decision denying

plaintiff's SSI and DIB applications.  (Tr. 54-62).  Plaintiff appealed the decision and the Appeals Council granted him a new hearing in light of new and material medical evidence not in the record at the time of the initial hearing.  (Tr. 66-71).

The second hearing was held on December 8, 2009.  Testifying at the hearing were plaintiff, who was represented by counsel (Tr. 751-59), medical expert Walter Hulon, M.D. (Tr. 759-76), and vocational expert (VE) William Cody.  (Tr. 777-79).  On January 12, 2010, the ALJ issued his second decision denying plaintiff's SSI and DIB applications.  (Tr. 15-22).

The ALJ found that plaintiff suffers from severe impairments of chronic pain syndrome resulting from a prior motor vehicle accident, degenerative joint disease in the right knee, panic disorder, and social phobia.  (Tr. 17).  The ALJ determined that these severe impairments, considered singly and in combination, do not meet or medically equal any impairment contained in the Listings.  (Tr. 18).  The ALJ determined that plaintiff retains the residual functional capacity (RFC) to perform a range of light level work with the following limitations:

> He can lift/carry and push/pull up to 20 lbs. occasionally, 10 lbs.
> frequently; he can stand and/or walk a total of six hours in an eight-hour
> workday; he can occasionally stoop, kneel, crouch, and climb ramps or
> stairs; he should never crawl, balance, climb ladders, ropes and scaffolds,
> or work at unprotected heights and around hazardous machinery.  [He] is
> able to understand, remember and carry out detailed, but not complex,
> instructions; he cannot interact with the general public and cannot interact
> with coworkers or supervisors more than occasionally; he should have no
> sustained close interaction with his coworkers.

*Id.*  The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent with plaintiff's RFC to do light level work.  (Tr. 19).  The ALJ determined that

plaintiff is unable to perform his past relevant heavy level work as a machinist and machine operator. (Tr. 20). However, based on the VE's testimony, the ALJ determined that jobs exist in significant numbers in the national economy, such as unskilled light packer, cleaner, and utility worker, that plaintiff could perform given the RFC to perform a range of light level work. (Tr. 20-21). Consequently, the ALJ concluded that plaintiff is not disabled under the Social Security Act and therefore not entitled to SSI or DIB. (Tr. 21).

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner. (Tr. 7).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical

3

or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  Eligibility is dependent upon disability, income, and other financial resources.  20 C.F.R. § 416.202.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations.  20 C.F.R. § 404.1520.  First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends.  Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends.  Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded.  20 C.F.R. § 404.1520(d).  Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment.  If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the

4

national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981).

Plaintiff has the burden of proof at the first four steps of the sequential evaluation process. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *Wilson*, 378 F.3d at 548. *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *Wilson*, 378 F.3d at 548.

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that

5

it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In addition to the objective medical evidence, the Commissioner must consider other evidence of pain, such as statements or reports from plaintiff, plaintiff's treating physicians and others about plaintiff's prescribed treatment, daily activities, and efforts to work, as well as statements as to how plaintiff's pain affects his daily activities and ability to work. *Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994) (citing 20 C.F.R. § 404.1529(a)). Specific factors relevant to plaintiff's allegations of pain include his daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes; treatment other than medication plaintiff has received for relief of his pain; any measures plaintiff uses to relieve his pain; and other factors concerning his functional limitations and restrictions due to pain. *Id.*; 20 C.F.R. § 404.1529(a). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish that he is disabled, *Duncan,* 801 F.2d. at 853, statements about his pain or other symptoms are not sufficient to prove his disability. 20 C.F.R. § 404.1529(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id.*

Where the medical evidence is consistent and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, there is both substantially conflicting medical evidence as well as substantial evidence supporting a finding of disability,

6

the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-530 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). Likewise, a treating physician's opinion is entitled to substantially greater weight than the contrary opinion of a non-examining medical advisor. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir. 1994). The Social Security regulations likewise recognize the importance of longevity of treatment,

7

providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion. 20 C.F.R. § 404.1527(d).  These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(3)-(6); *Wilson*, 378 F.3d at 544.  The ALJ must likewise apply the factors set forth in § 404.1527(d)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. § 404.1527(d).  When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

## MEDICAL RECORD

On November 10, 2005, plaintiff saw Nav K. Grandhi, M.D., a gastroenterologist, on a referral from his treating physician, Kellie Boyd, M.D.  (Tr. 255).  Plaintiff presented with complaints of severe abdominal pain resulting from the 1995 car crash and stated that he was

currently taking Duragesic, Effexor XR, and Tizanidine. *Id.* Plaintiff reported that he fractured ribs during the accident which perforated multiple intestinal loops and that he had nine separate surgeries. *Id.* Plaintiff stated that he has had pain since then when he eats certain solid foods and reported a weight loss of nearly thirty pounds as a result. *Id.* Dr. Grandhi noted that plaintiff may be experiencing irritable bowel syndrome or partial small bowel obstruction secondary to adhesions and that a CT scan was obtained of plaintiff's abdomen and pelvis. *Id.* Dr. Grandhi recommended an upper endoscopy to rule out peptic ulcer disease, possibly a colonoscopic evaluation, and a trial of Levbid 1. *Id.* The doctor further noted that plaintiff specified that he would like Oxycodone as it is the only medication that allows him to eat food. Dr. Grandhi advised plaintiff he did not prescribe narcotics. *Id.* Venous imaging revealed no evidence of deep venous thrombosis or superficial venous thrombosis bilaterally. (Tr. 256). A CT scan of plaintiff's abdomen indicated chronic superior vena cava occlusion with prominent venous collaterals in the chest and abdomen, large calcified granulomata in the right upper lobe and in the right paratracheal region, and that fibrosing mediastinitis should be considered as a cause of the superior vena cava obstruction. (Tr. 257).

On December 6, 2005, plaintiff was examined by Hammam Akbik, M.D., at the Pain Center at University Pointe, where he reported experiencing continuous pain at a level of 10 on a 1 to 10 scale in his abdomen, back, right knee, and left ankle. (Tr. 245, 247). Plaintiff reported that the pain resulted from a 1995 car crash and is worse when he moves but is lessened when he stands and takes pain medication. (Tr. 246). Plaintiff walked with a cane. (Tr. 247). Cervical motion was full; lumbar flexion and extension were limited; bilateral straight leg raising was normal; extremity strength was intact; and reflexes in the lower extremities were normal. (Tr.

9

248-49). Dr. Akbik's assessed that plaintiff's abdominal pain was likely a result of adhesions in combination with neuroma and that the knee and back pain was likely due to degenerative disc and joint diseases. He also noted that plaintiff presented with anxiety and depression and exhibited questionable drug seeking behavior such as refusing to obtain prior medical records, not disclosing his medical history, and attempting to convince his examiner that he needed oral medications, specifically Oxycodone. (Tr. 249). Plaintiff received prescriptions for Cymbalta, Tizanidine HCL, and Duragesic patches and was asked about a diagnostic hypogastric block but seemed hesitant to do the procedure. (Tr. 249).

Dr. J. Baresh, a pain clinic physician, examined plaintiff on February 13, 2006. (Tr. 266). Knee motion was full and there was no sensory abnormalities. (Tr. 266). Plaintiff was prescribed medications. (Tr. 267). By April 26, 2006, plaintiff rated his pain as a level 2 and stated the pain was 70% better. Plaintiff stated he had been "given back his life," he was pleased with his medications, and did not need any changes whatsoever. (Tr. 263).

Dr. G. Hinzman, a state agency physician, assessed plaintiff's ability to work in May 2006. (Tr. 360-66). Dr. Hinzman opined that could lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk 6 hours a day, and sit 6 hours a day. (Tr. 360A). Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 361). On August 21, 2006, Dr. M. Congbalay, another state agency physician, affirmed Dr. Hinzman's findings. (Tr. 359).

Dr. D. Rottinghaus, a chiropractor, saw plaintiff from September 2005 to June 2006. (Tr. 341). Dr. Rottinghaus reported that plaintiff had an antalgic gait and used a cane. (Tr. 341). There was slight muscle weakness in the extremities, reduced reflexes, and reduced motion by 20

10

degrees in the back and extremities. (Tr. 341). Plaintiff was unable to do fine and gross manipulation. (Tr. 341).

Dr. L. Gomaa, a pain management physician, initially examined plaintiff on June 14, 2006. (Tr. 497). Plaintiff had a slow gait with a limp, but there were no motor, sensory or reflex deficits in the extremities. (Tr. 497-98). Straight leg raising was normal. (Tr. 498). Dr. Gomaa diagnosed chronic abdominal pain, right knee and left ankle derangement, and degenerative disc disease of the lower back. *Id.* Dr. Gomaa refused to prescribe any medications as plaintiff's drug screening was positive for cocaine. (Tr. 498).

On January 2, 2007, Dr. Gomaa found plaintiff had a slow and stiff gait; some motor, sensory and reflex deficits in the extremities; and spasm along the spine. (Tr. 482-83).

On March 1, 2007, Dr. Gomaa reported that plaintiff had a slow and stiff gait, muscle spasms and tenderness on palpation in the cervical, thoracic, and lumbar regions, and multiple trigger points in the cervical and lumbar regions. (Tr. 473). Plaintiff was taking Morphine Sulfate and Oxycodone and reported no adverse reactions. He also reported an increase in his daily activities and good pain relief with the prescribed medications. (Tr. 473). Dr. Gomaa opined plaintiff could occasionally carry and pull less that 10 pounds; he could not repetitively move his neck and upper back; he could not repetitively move his lower back; he had to avoid twisting his back over 30 degrees; he had to avoid bending over 45 degrees; he had to avoid reaching over the head; and he had to be able to frequently change positions. (Tr. 474-75).

On March 29, 2007, plaintiff reported an increase in activities and being able to share activities with his children. He reported overall improvement with prescribed medications and therapy. (Tr. 468). Pain clinic records from March to November 2007, show that at most times

11

plaintiff had a normal gait; he had no motor, sensory or reflex deficits in the upper extremities and few deficits in the lower extremities; he had spasm along the spine; he had normal bilateral straight leg raising; and he had decreased cervical and lumbar motion. (Tr. 399, 415, 426, 442-43, 450-51, 463-64, 482-83).

Dr. M. Rorrer, D.O., another physician in the pain clinic, saw plaintiff from June to September 2007. (Tr. 431, 439, 447). In June 2007, plaintiff stated he had good pain relief with medications and an increase in activities of daily living. (Tr. 447). Plaintiff had normal gait and coordination; no motor, sensory or reflex abnormalities in the extremities; normal straight leg raising; muscle spasm in the spine; few trigger points in the thoracic region; no swelling, joint effusion, temperature changes, and/or skin discoloration; and used no ambulatory aids. (Tr. 431, 439, 442, 447, 448). Cervical and lumbar motion was reduced. (Tr. 440). Plaintiff could occasionally carry and pull less that 10 pounds; he could not repetitively move his neck and upper back; he could not repetitively move his lower back; he had to avoid twisting his back over 30 degrees; he had to avoid bending over 45 degrees; he had to avoid reaching over the head; and he had to be able to frequently change positions. (Tr. 434, 441, 449). In October and November 2007, plaintiff reported he had good pain relief with medications and an increase in activities of daily living. (Tr. 412, 421). He had normal gait and coordination; no motor, sensory or reflex abnormalities in the extremities; normal straight leg raising; muscle spasm in the spine; few trigger points in the thoracic region; no swelling, joint effusion, temperature changes, and/or skin discoloration; and used no ambulatory aids. (Tr. 413, 422). Range of motion in the cervical and lumbar spines was normal. (Tr. 416).

On January 26, 2008, Dr. Grandhi reported that plaintiff presented with chief complaints of chronic reflux disease and chronic abdominal pain that have been ongoing for 16 years. (Tr. 254). Dr. Grandhi further stated that plaintiff only experiences relief from this pain from pain medication which he takes chronically and that plaintiff reports his pain is chronic and unchanged and, consequently, the endoscopic work up previously scheduled has been cancelled. *Id.*

In March and April 2008, Dr. Gomaa found plaintiff had a slow and stiff gait; no motor, sensory or reflex deficits in the extremities; normal bilateral straight leg raising; spasm along the spine; no swelling, joint effusion, temperature changes, and/or skin discoloration; and used no ambulatory aids. (Tr. 390, 396). In March 2008, cervical and lumbar motion was reduced. (Tr. 397). Dr. Gomaa opined plaintiff could occasionally carry and pull less that 10 pounds; he could not repetitively move his neck and upper back; he could not repetitively move his lower back; he had to avoid twisting his back over 30 degrees; he had to avoid bending over 45 degrees; he had to avoid reaching over the head; and he had to be able to frequently change positions. (Tr. 391- 92, 398).

Records from May 2006 through May 2008 of Dr. Boyd, plaintiff's primary care physician, show plaintiff was primarily seen for refills of his medications for hypertension and insomnia. (Tr. 522-555). In March 2008, plaintiff was seen for left leg swelling. (Tr. 534). Doppler studies were negative for a blood clot and plaintiff was given Lasix as needed for swelling. (Tr. 531). By April 9, 2008, the edema was assessed as "mild." (Tr. 529). A May 2008 physical examination showed he walked with a smooth gait. (Tr. 526).

On May 16, 2008, Dr. Boyd completed a questionnaire about plaintiff's ability to do physical work-related activities. (Tr. 517-21). Dr. Boyd noted that he saw plaintiff one to two times per year since 2005. (Tr. 517). Dr. Boyd noted abdominal and right knee scars as clinical findings of pain. (Tr. 517-18). Dr. Boyd opined that plaintiff could stand/walk less than 2 hours a day, standing 15 minutes at a time; sit 6 hours a day, one hour at a time; take unscheduled breaks every hour; rarely lift less than 10 pounds; never twist or climb ladders; rarely stoop or crouch; and occasionally climb stairs. (Tr. 519-20). Plaintiff would be absent from work about 3 days a month. (Tr. 521).

On September 10, 2008, Dr. Gomaa reported plaintiff had been using cocaine. (Tr. 681). Plaintiff had been noncompliant with his pain management agreement, he had deceived his healthcare providers, and he had drug seeking behavior. (Tr. 681). Dr. Gomaa recommended seeking immediate help for plaintiff's drug dependency problem. (Tr. 681).

Medical records from Dr. Boyd in October 2008 show plaintiff's gait was coordinated and smooth, and digits were without clubbing or cyanosis. (Tr. 614). His peripheral edema was an "ongoing intermittent issue which usually resolves with an extra dose of lasix." *Id.*

On November 5, 2008, Dr. Gomaa completed a questionnaire about plaintiff's ability to do physical work-related activities. (Tr. 599-603). Dr. Gomaa reported abdominal scars with poor abdominal strength, impaired limping gait, and right knee scars as clinical findings and objective signs of the pain. (Tr. 600). Plaintiff was not a malingerer, he often had pain that interfered with attention and concentration, and he could not do low stress work. (Tr. 601). Plaintiff could stand/walk less than 2 hours a day; stand 20 minutes at a time; and sit at least 6 hours a day, one hour at a time. (Tr. 601). Plaintiff had to walk every 60 minutes for 2 minutes;

14

shift positions at will; take unscheduled breaks; and elevate his legs 6 inches with prolonged

sitting. (Tr. 601-02). Plaintiff could occasionally lift less than 10 pounds; rarely twist or bend;

never crouch, climb ladders or stairs; and he had to be able to be absent 2 days a month. (Tr.

602-03).

Dr. Gomaa examined plaintiff on December 10, 2008. (Tr. 677). Plaintiff had a normal

gait; there were no motor, sensory or reflex deficits in the extremities; bilateral straight leg

raising was normal; there was muscle spasm along the spine; he had no swelling, joint effusion,

temperature changes, and/or skin discoloration; and used no ambulatory aids. (Tr. 677). Lumbar

and cervical spine motion was reduced. (Tr. 678). Dr. Gomaa opined plaintiff could

occasionally carry and pull less that 10 pounds; he could not repetitively move his neck and

upper back; he could not repetitively move his lower back; he had to avoid twisting his back over

30 degrees; he had to avoid bending over 45 degrees; he had to avoid reaching over the head; and

he had to be able to frequently change positions. (Tr. 678-79).

On April 7, 2009, Dr. Boyd completed a Butler County, Department of Job and Family

Services form. (Tr. 609). Dr. Boyd opined plaintiff was unable to work. (Tr. 609).

On April 30, 2009, Dr. Boyd stated plaintiff's back pain was stable and managed by pain

management. (Tr. 619). Dr. Boyd completed a form indicating that plaintiff had an antalgic gait,

and he had no fine or gross motor deficits. (Tr. 617).

Dr. Gomaa saw plaintiff from January to October 2009. (Tr. 646-76). Dr. Gomaa

reported plaintiff had good pain relief with medications and an increase in activities of daily

living. (Tr. 647, 656, 667). Plaintiff had normal gait and coordination; no motor, sensory or

reflex abnormalities in the extremities; normal straight leg raising; muscle spasm in the spine;

15

few trigger points in the thoracic region; no swelling, joint effusion, temperature changes, and/or skin discoloration; and used no ambulatory aids. (Tr. 647-48, 656-57, 667-68). In July 209, there was decreased cervical and lumbar motion. (Tr. 657). Dr. Gomaa opined plaintiff could occasionally carry and pull less that 10 pounds; he could not repetitively move his neck and upper back; he could not repetitively move his lower back; he had to avoid twisting his back over 30 degrees; he had to avoid bending over 45 degrees; he had to avoid reaching over the head; and he had to be able to frequently change positions. (Tr. 648-49, 657-58, 668-69).

### PLAINTIFF'S TESTIMONY AT THE HEARING

At the September 10, 2008 hearing, plaintiff testified he was let go from his prior machinist job, which required a significant amount of strength, as he was incapable of doing what was needed due to being impaired by his medications for pain. (Tr. 720). The medications, including morphine and oxycodone, are used to treat pain in his intestine, ankle, and knee resulting from injuries sustained in a 1989 car crash. (Tr. 720-22). Plaintiff stated these medications also impaired his abilities to read and write and do basic arithmetic. (Tr. 716-17). Plaintiff specified that his morphine medication causes him to be tired, dizzy and disorganized. (Tr. 720). Plaintiff further stated that he has chronic back pain resulting from a loss of abdominal strength due to several operations and that he has difficulty digesting food due to his intestines being punctured by his ribs in the automobile accident. (Tr. 722).

Plaintiff stated that he has difficulty lifting things, has pain if he lifts too much, and is able to lift a gallon of milk. (Tr. 723). Also, when he walks longer than 5 to 10 minutes, he experiences pain in his knee and swelling in his right foot caused by an edema. (Tr. 724). Plaintiff further stated that he has difficulty bending over, stooping and crouching, walking up

16

stairs, and sitting for too long without falling asleep. (Tr. 725-26, 735).

Plaintiff testified that he also suffers from depression, anxiety and social phobias and that he takes separate medications to treat his mental impairments. (Tr. 722, 725). Plaintiff stated he regularly sees a therapist and psychiatrist and has taken medications for approximately two years. (Tr. 726-27). Plaintiff stated that he generally stays to himself, has problems eating due to his intestinal issues, has problems sleeping due to his chronic pain and takes Ambien, and has very low energy and self-esteem. (Tr. 727-28). The plaintiff further testified that he has difficulty with concentration and memory, has frequent crying spells and panic attacks, and has suicidal thoughts. (Tr. 728).

The plaintiff specified that when his children need to be taken somewhere he has panic attacks and he had to take medications, but that those only lessened the panic and did not eliminate it. (Tr. 729). Plaintiff explained that when he meets strangers he gets nervous and perspires. He stated that the panic attacks began after he fell down a flight of stairs and that he now panics anytime he has to go downstairs and that this affected his work performance. (Tr. 730, 733). He testified that he spends most of his day in his room, only leaving for medical appointments, that he does not visit with friends, grocery shops only occasionally, and when he has to go to a store he tries to go at night when it is less crowded. (Tr. 731, 733-34).

Plaintiff stated he watches television, but that he has difficulty concentrating and staying awake during a program, and does not have hobbies or engage in other recreational activity. (Tr. 733, 735). He stated that he cannot read due to an uncorrectable vision problem stemming from the car crash, and further, he was in a recent car accident as a result of his poor vision and has since stopped driving. (Tr. 733-34). Plaintiff also testified that he does not currently use street

17

drugs, though he did previously, but is now regularly tested at his pain clinic. (Tr. 732).

At the December 8, 2009 hearing, the plaintiff reiterated his prior testimony concerning his physical and mental impairments and stated that his condition had gotten worse since the first hearing. (Tr. 752). Specifically, plaintiff testified that the screws in his knee were grinding together and he had a prescription for an electronic wheelchair. (Tr. 753). Plaintiff stated he is still attending the pain clinic, twice a month for five hours at a time for treatment and therapy. (Tr. 754). Plaintiff identified that his medications had been altered, and that in addition to morphine and oxycodone, he was now taking diazepam. (Tr. 755). He testified that these medications made him very dizzy, sleepy, forgetful, uncoordinated and unsteady on his feet. (Tr. 758). Further, plaintiff asserted that he would not be able to deal with his pain without these medications. *Id.*

Plaintiff stated that his strength had decreased and now he could only lift less than a gallon of milk, stand for five minutes at a time, that he's never comfortable sitting or standing, and that he can only walk about five minutes at a time. (Tr. 755-56). Plaintiff further testified that when his ankle swells, he cannot walk at all, and that he has ongoing thoughts of suicide as a result of his conditions and continues to experience fear of crowds and people. (Tr. 756). He explained that he tried to work in 2005 but the pain in his legs and back was too severe, and that his stomach muscle was almost completely gone due to 12 operations regarding his punctured intestines. (Tr. 758).

When questioned about use of street drugs, plaintiff testified that he did use cocaine, but only once, in 2007 or 2008, and possibly earlier in his teenage years. (Tr. 756-57). When questioned about a positive drug test for cocaine in 2006, the plaintiff explained his contradictory

18

testimony by saying he was on a high dose of medication and did not have a good memory.  (Tr.

757).  Plaintiff testified that he did not have issues with overusing benzodiazepines or narcotic

medications.  *Id.*

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

At the second hearing, the ALJ asked the VE to consider an individual who is limited to

lifting, carrying, pushing, and pulling up ten pounds frequently and twenty pounds occasionally,

can stand and/or walk up to six hours in an eight-hour workday, can occasionally stoop, kneel,

crouch, and climb ramps and stairs but should not crawl, balance, climb ladders, ropes, or

scaffolds, and not work around unprotected heights or hazardous machinery.  (Tr. 778).  Further,

the individual can understand, remember, and carry out detailed, but not complex, instructions,

cannot interact with the general public and cannot interact with co-workers or supervisors more

than occasionally and should not have sustained close interaction on the job with co-workers.  *Id*.

Based on this hypothetical, the VE testified that such an individual could perform light unskilled

jobs such as physical demand packer, cleaner, and utility worker. (Tr. 778-79).  The VE stated

that if such an individual also missed three workdays per month, it would preclude all light

unskilled jobs.  (Tr. 779).

## THE MEDICAL EXPERT'S TESTIMONY AT THE HEARING

Dr. Hulon, who is board certified in occupational medicine, testified as a medical expert

(ME) at the second hearing.  The ALJ asked the ME to identify plaintiff's medically

determinable impairments since August 1, 2005.  (Tr. 759).  The ME testified that plaintiff had

surgical scars on his right knee, left ankle, and on and in his abdomen.  (Tr. 760).  The ME stated

there was no other documentation of plaintiff's physical injuries other than chronic obstruction

occlusion of the superior vena cava which may have occurred between the 1989 car accident and 1995, but that this occlusion was not a severe impairment. *Id.* The ME testified that plaintiff's hypertension was also not a severe impairment as it was managed and controlled. (Tr. 761). The ALJ identified that the record contained diagnoses of degeneration of "lumbar, lumbosacral discs, recurrent location of left lower joint, [and] ankylosis of the ankle and foot joint." The ME testified there was no x-ray evidence in the record supporting those diagnoses. *Id.* The ME explained that while plaintiff's scar shows that plaintiff had surgery on his knee, the record lacked documentation supporting a diagnosis of lumbar and lumbosacral intervertebral disc disease. In addition to the lack of x-ray evidence confirming degeneration of the lumbar spine or disc disease, the ME noted that plaintiff has full range of motion in all his joints; normal reflexes, motor examination, and sensation; negative straight leg raising bilaterally; and full range of motion. (Tr. 761-62). The ME testified that plaintiff had significant edema in the left extremity around his ankle which is easily treated. (Tr. 762).

The ME also testified that the record supported that plaintiff was possibly narcotic and benzodiazepine seeking, that in 2005 plaintiff's doctor noted drug seeking behavior in his records, and that plaintiff has frequently denied procedures which may have provided relief from pain, opting instead to take pain medications. (Tr. 763-64). The ME further testified that plaintiff's statements in the medical evidence regarding his levels of pain supported a finding that plaintiff was drug-seeking, as did medical evidence that at multiple abdominal examinations no abnormalities were noted. (Tr. 764). The ME testified that there was no objective or clinical evidence substantiating a cause for plaintiff's abdominal pain, nor was there objective evidence to support the level of pain plaintiff alleged. (Tr. 765). Dr. Hulon opined that Dr. Gomaa's

November 5, 2008 assessment of plaintiff's functional capacity was not supported by the clinical examinations, yet the opinion of the state agency physician was supported by the objective medical evidence. (Tr. 765-767).

**OPINION**

Plaintiff assigns a single error in this case: the ALJ erred by rejecting the RFC opinion of plaintiff's treating physician, Dr. Gomaa. For the following reasons, the Court finds the decision of the ALJ is supported by substantial evidence and should be affirmed.

Dr. Gomaa's November 2008 functional capacity assessment limits plaintiff to less than a full range of sedentary work. (Tr. 599-603). Dr. Gomaa also opined that plaintiff was likely to miss two days of work per month because of his impairments. (Tr. 603). The VE testified that Dr. Gomaa's reported functions, if accepted, would preclude work activity. (Tr. 779).

Plaintiff alleges the ALJ erred by giving reduced weight to the November 2008 functional capacity assessment of Dr. Gomaa, plaintiff's long-time treating physician. Plaintiff asserts that as the treating pain management specialist, Dr. Gomaa's opinion was entitled to controlling weight. Plaintiff alleges "[t]here is ample medical evidence in this case of the impairments suffered by [plaintiff] sufficient to support Dr. Gomma's (sic) assessment. In the assessment, Dr. Gomaa specifically identifies evidence of abdominal inguinal scars with very poor abdominal strength, an impaired liming (sic) gait and surgical scars on the right knee." (Doc. 8 at 3, citing Tr. 600). Plaintiff contends that Dr. Gomaa was entitled to controlling weight given the length and frequency of her treatment with plaintiff and the consistency of her opinion "with the record as a whole," including the functional capacity assessment of Dr. Boyd, plaintiff's primary care physician. (Doc. 8 at 4, citing Tr. 517-20). Plaintiff concedes there is no x-ray or MRI evidence

21

to support plaintiff's alleged disabling impairments, but argues "there is an abundance of objective evidence present in the records of the treating physicians in terms of examination findings including, but not limited to, muscle spasms, decreased rang (sic) of motion and altered gait." (Doc. 13 at 2).

Plaintiff has wholly failed to direct the Court's attention to the "abundance of objective evidence" in the record that purportedly supports Dr. Gomaa's functional capacity opinion. The burden of proof is on plaintiff to demonstrate that the ALJ's residual functional capacity determination is not supported by substantial evidence. *See Jordan v. Commissioner of Social Security*, 548 F.3d 417, 423 (6th Cir. 2008); *Her v. Commissioner of Social Security*, 203 F.3d 388, 392 (6th Cir. 1999). Plaintiff has made no serious effort to cite to the specific record evidence that supports his position in this case.

The ALJ's decision to give reduced weight to the functional capacity opinion of Dr. Gomaa is substantially supported by the record. As the ALJ reasonably noted, Dr. Gomaa's records showed that plaintiff's physical examinations were normal except for occasional findings of diminished cervical and lumbar range of motion, muscle spasms, and/or trigger points. (Tr. 19, Tr. 57). Dr. Gomaa's physical examinations revealed clinical findings that were inconsistent with the functional limitations she imposed in her RFC report. For example, Dr. Gomaa's functional capacity assessment lists "impaired limping gait" as a clinical finding to support her opinion. (Tr. 600). Yet, most examinations showed plaintiff had a normal gait; only few examinations showed an antalgic gait; and only one examination revealed plaintiff used a cane, while all others reflected he used no ambulatory aids. (Tr. 390, 396, 413, 415, 422, 426, 431, 442-43, 447, 448, 450-51, 463-64, 473, 482-83, 497-98, 647, 656, 667, 677). Cervical and

22

lumbar motion were reduced, one examination showed full knee motion, one examination revealed extremity motion reduced by only 20 degrees, and bilateral straight leg raising was always normal. (Tr. 248-49, 266, 300, 341, 396-97, 399, 415, 426, 431, 439-40, 442-23, 447, 450-51, 463-64, 482-83, 656, 667, 677-78, 657). Clinical examinations also showed: strength in the extremities was normal or only slightly reduced; no documented evidence of any atrophy; spasm along plaintiff's spine; and very few motor, sensory or reflex deficits in the lower extremities. (Tr. 248-49, 266, 300, 341, 396, 399, 415, 426, 431, 439, 442-43, 447, 450-51, 463-64, 473, 482-83, 497-98, 656, 667, 677). Plaintiff's progress notes also revealed that plaintiff consistently reported good pain relief with the pain management regimen. (Tr. 57, citing Tr. 390-514). Nor did Dr. Gomaa order objective tests, such as MRIs or x-rays, to confirm her diagnosis of degenerative disc disease.

The ALJ reasonably relied on the testimony of Dr. Hulon, the medical expert at the hearing, that plaintiff was capable of performing a range of light work. (Tr. 19-20). A non-examining physician's opinion may be accepted over that of an examining physician when the non-examining physician clearly states the reasons why his opinion differs from that of the examining physician. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The ALJ was entitled to accept Dr. Hulon's opinion on the severity of plaintiff's impairments in preference to Dr. Gomaa's as Dr. Hulon had access to the entire medical record in this case and explained his reasons for assessing plaintiff's functional capacity. The medical expert testified that a review of the entire record failed to show an objective basis to support the level of pain alleged by plaintiff. (Tr. 763-65, 769). As noted above, there were no x-ray, MRI, or other objective tests confirming the diagnoses relied upon by Dr. Gomaa for her functional capacity opinion. Likewise, Dr.

23

Hulon testified that the clinical findings of record failed to support the extreme restrictions imposed by Dr. Gomaa. (Tr. 765-67). Dr. Hulon testified that with chronic pain syndrome there is objective evidence, such as x-ray findings, that accompanies such a diagnosis. (Tr. 775). However, in this case, there is no such objective evidence. *Id.* Likewise, Dr. Hulon testified that Dr. Boyd's assessment of plaintiff's functional capacity is not supported by the medical evidence and, therefore, did not support Dr. Gomaa's RFC assessment. (Tr. 767-68). Based on his review of the entire record, Dr. Hulon opined that plaintiff was capable of a limited range of light work activity. (Tr. 766-67).

Additionally, Dr. Hulon observed plaintiff at the administrative hearing, listened to his testimony, and based his conclusions in part on his first-hand observation of plaintiff. *Barker*, 40 F.3d at 794. Moreover, Dr. Hulon's opinion is consistent with those of Drs. Hinzman and Congbalay, the state agency physicians who reviewed the medical records and determined plaintiff was capable of a range of light work activity. (Tr. 359-66). Therefore, Dr. Hulon's testimony further supports the ALJ's decision to give reduced weight to the opinion of Dr. Gomaa on plaintiff's functional capacity.

In view of the lack of objective and clinical evidence supporting Dr. Gomaa's opinion, as well as the conflicting evidence in the record, it was the ALJ's prerogative to discredit Dr. Gomaa's opinion on plaintiff's functional capacity. *Smith v. Commissioner of Social Security*, 482 F.3d 873, 875-77 (6th Cir. 2007). The ALJ's factual findings, if supported by substantial evidence in the record, must be affirmed even if the reviewing Court would resolve the evidentiary conflicts differently. *Kinsella*, 708 F.2d at 1059. The ALJ's rejection of the more restrictive functional assessments set forth by Dr. Gomaa is amply supported by the record taken

24

as a whole and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be AFFIRMED and this case be dismissed from the docket of

this Court.

Date: _6/13/11_

Karen L. Litkovitz
United States Magistrate Judge

25

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ALVESTER LIPSCOMB, JR.,                    Case No. 1:10-cv-396
    Plaintiff                              Dlott, J.
                                           Litkovitz, M.J.

    vs

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).